UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BINDER & BINDER, P.C.,

                 Plaintiff,

              - against -

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
**13 CV 432 (DRH)**

**APPEARANCES:**

**ZINKER & HERZBERG, LLP**
Attorneys for Plaintiff
278 East Main Street, Suite C
P.O. Box 866
Smithtown, New York 11787
By:    Jeffrey Herzberg, Esq.

**LORETTA E. LYNCH**
**UNITED STATES ATTORNEY**
Eastern District of New York
Attorney for Defendant
610 Federal Plaza, Fifth Floor
Central Islip, New York 11722
By:    Vincent Lipari, Assistant U.S. Attorney

**HURLEY, Senior District Judge:**

       Plaintiff, Binder & Binder, P.C. ("Binder" or "Plaintiff"), brings this action against defendant, Carolyn W. Colvin, Commissioner of Social Security ("Commissioner" or "Defendant"), seeking a judgment for the statutory fees relating to Binder's successful representation of a claimant in a proceeding before the Social Security Administration ("SSA"). Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons stated below, the Commissioner's

motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

**BACKGROUND**

The material facts are drawn from Defendant's Local Civil Rule 56.1 Statement. Plaintiff failed to file a Local Civil Rule 56.1 Statement with its motion for summary judgment and failed to controvert the statement of material facts submitted by Defendant. Accordingly, the material facts submitted by Defendant that are supported by citation to admissible evidence, as required by Local Civil Rule 56.1, are deemed admitted.

In August 2006, David Walton, a Michigan resident, filed applications for Supplemental Social Security Income and disability insurance benefits under Titles II and XVI of the Social Security Act. Walton entered into a fee agreement with Plaintiff on June 15, 2007, which provided that, pursuant to 42 U.S.C. § 406(a)(2), if Walton were to be awarded benefits, he would pay Plaintiff's attorneys' fees out of his past due benefits.

In March 2009, an administrative law judge ("ALJ") issued a partially favorable decision which denied disability insurance benefits to Walton for the time period from September 20, 2005 to January 31, 2007, and for the time period after September 1, 2008, but granted disability insurance benefits to Walton for the time period of February 1, 2007 through September 1, 2008. Subsequently, the SSA notified Walton, in a letter dated April 27, 2010, that his fee agreement with Plaintiff had not been approved, and that Plaintiff was required to file a petition in order to recover its fees. Accordingly, Plaintiff notified the SSA that it intended to file a petition to recover its fees at the conclusion of its representation of Walton, and that Walton's case was still pending as Plaintiff had appealed the ALJ's partially favorable decision.

Walton's case was remanded by the Appeals Council to the ALJ, and, upon remand, the

ALJ issued a fully favorable decision on May 20, 2010. However, the ALJ's decision again rejected Plaintiff and Walton's fee agreement because more than one representative had been appointed, the representatives had not signed a single fee agreement, and the representatives who had not signed the fee agreement had not waived filing and charging a fee.

Plaintiff sent a letter to the ALJ, dated October 26, 2010, requesting that the SSA approve a fee of $11,486.75, representing 25% of the past due benefits awarded to Walton. Plaintiff also sent a letter to the ALJ, dated November 15, 2010, which asked the ALJ to process Plaintiff's request for approval to charge and receive a fee, and which request attached a letter, signed by Walton, stating that Walton consented to Plaintiff's requested fee. Plaintiff again requested, by letter dated January 10, 2012, that the ALJ issue its approval for Plaintiff to charge and receive a fee. The ALJ then provided Walton with copies of Plaintiff's fee petitions for which Walton was to comment on within twenty days; however, Walton did not submit any comments.

On June 1, 2012, Walton filed a voluntary petition for bankruptcy in Michigan, listing Plaintiff as an unsecured creditor. On October 23, 2012, the ALJ issued an authorization for Plaintiff to charge and collect $11,486.75 for its attorneys' fees. The ALJ's order permitted Walton thirty days to object to Plaintiff's fee. Walton thereafter notified the SSA, on November 26, 2012, that he was entitled to keep the amount of money being withheld as Plaintiff's attorneys' fees because he had filed for bankruptcy. Walton's bankruptcy attorneys also sent the SSA a copy of Walton's Notice of Bankruptcy Filing. On January 8, 2013, the bankruptcy court granted Walton a discharge under § 727 of the Bankruptcy Code, which discharge Plaintiff did not oppose.

Pursuant to the SSA's policy manual, HALLEX I-1-2-3, when attorneys' fees are sought by a claimant's representative, and a bankruptcy action has been commenced by the claimant, the SSA's actions will depend upon the outcome of the bankruptcy proceeding. In that regard,

3

HALLEX I-1-2-3 specifically provides that if the bankruptcy proceeding results in a discharge of the claimant's debt to the representative, the claimant is no longer responsible for the representative's fee and the SSA will release any withheld funds to the claimant. If the representative inquires about its fee, the SSA is to advise the parties of the action it took pursuant to the bankruptcy court's order. The SSA is further prohibited from acting upon fee petitions or approving or disapproving a fee agreement for any services that were performed during the claimant's bankruptcy time period.

The SSA paid $14,663.24 directly into Walton's bank account on January 15, 2013, and sent a letter to Walton on January 20, 2013 notifying him of the payment. Plaintiff was also provided with a copy of the SSA's January 20, 2013 letter to Walton. Thereafter, Plaintiff commenced the instant action. The SSA thereafter sent Plaintiff a letter, dated April 8, 2013, informing Plaintiff that it would not take any further action on Plaintiff's attorneys' fee issue because of Walton's discharge in bankruptcy, and that the issue was to be resolved among Walton, Plaintiff and the bankruptcy court.

## DISCUSSION

**I.** *Summary Judgment Standard*

Summary judgment, pursuant to Rule 56, is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable

factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying

burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II. *Subject Matter Jurisdiction and Sovereign Immunity*

"In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). While "[t]he waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction, . . . the issues of subject-matter jurisdiction and sovereign immunity are nonetheless wholly distinct." *Id.* (citations and internal quotation marks omitted). Thus, "a showing of jurisdiction is not alone sufficient to allow the instant suit to proceed-there must also be a showing of specific waiver of sovereign immunity." *Id.*

At the heart of Defendant's motion is the assertion that Plaintiff's claim is barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Haber v. United States*, 2012 WL 92499, at *2 (E.D.N.Y. Jan. 10, 2012) (quoting *Va. Office for Prot. and Advocacy v. Stewart*, ––– U.S. ––––, ––––, 131 S. Ct. 1632, 1637 (2011)) (internal quotation marks omitted). "Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (citations and internal quotation marks omitted). In sum, "sovereign immunity is a jurisdictional bar, which, absent a waiver, shields the federal government, its agencies and its officers acting in their official capacit[ies] from suit[]." *Id.* (citations omitted); *see also Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) ("Absent an 'unequivocally expressed' statutory

waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." (citing *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999))).

Plaintiff asserts, however, that according to the cases *Binder & Binder PC v. Barnhart* ("*Binder II*"), 481 F.3d 141 (2d Cir. 2007) and *Binder & Binder, P.C. v. Astrue*, 848 F. Supp. 2d 230 (E.D.N.Y. 2012), the Court has federal question jurisdiction to hear its case pursuant to 28 U.S.C. § 1331, and the doctrine of sovereign immunity does not serve as an obstacle to the Court's exercise of its jurisdiction.

In *Binder II*, the plaintiff law firm had represented a claimant in a prior disability proceeding and had received an award of attorneys' fees from the SSA in connection with said representation. 481 F.3d at 142.[1] Subsequent to the SSA's certification and distribution of the attorneys' fees to the plaintiff, the claimant objected to the payment of attorneys' fees because she believed that her debt to the plaintiff had been discharged in bankruptcy. *Id.* As a result of the discharge in bankruptcy, which actually occurred before the plaintiff received its fees from the SSA, the SSA sought a return of the attorneys' fees it had paid the plaintiff, but the law firm refused to return the money, and, instead, brought an action seeking a declaratory judgment declaring that it was entitled to keep its fees. *Id.* at 142, 144. The Second Circuit determined that the plaintiff's claims concerning its attorneys' fees "ar[ose] out of property rights created by section 406 of the Act," and that the court "d[id] indeed have jurisdiction to consider [the plaintiff's claims]." *Id.* at

---

[1] 42 U.S.C. § 406, the statute governing a counsel's right to charge fees for obtaining a favorable determination for a claimant in a proceeding before the SSA, provides, in relevant part:

> . . . . if the claimant is determined to be entitled to past-due benefits under this subchapter and the person representing the claimant is an attorney, the Commissioner of Social Security shall . . . certify for payment out of such past-due benefits . . . to such attorney an amount equal to so much of the maximum fee as does not exceed 25 percent of such past-due benefits . . . .

42 U.S.C. § 406(a)(4).

7

150. Specifically, the Second Circuit held that the plaintiff law firm could "invoke federal question jurisdiction under 28 U.S.C. § 1331 because, were such jurisdiction unavailable, [the plaintiff] would be unable to obtain any judicial review of its claims under the Act." *Id.* In that regard, the Second Circuit observed that the plaintiff was unable to obtain judicial review of its claims pursuant to the judicial review provision of the Social Security Act, 42 U.S.C. § 405(g), because that section "limit[ed] judicial review to . . . decisions involving a party [to the Social Security hearing]," but the plaintiff law firm was not a party to the claimant's Social Security hearing. *Id.* at 149 (citations and internal quotation marks omitted). Having decided that jurisdiction was conferred under Section 1331, the Second Circuit proceeded to find that there was "no authority for the SSA to interpret and apply bankruptcy law or to enforce the orders of the Bankruptcy Court, and[,] . . . that, in the absence of such authority, the SSA's unambiguous and limited duty was to certify for payment to [the plaintiff] the firm's reasonable fee." *Binder II*, 481 F.3d at 152. Notably, the Second Circuit stated in a footnote of its decision that, "[a]lthough the SSA raise[d] the defense of sovereign immunity as to [the plaintiff's] claims, [the court's] conclusion that the SSA had the duty to pay [the plaintiff] the certified fee dispel[led] the [court's] need . . . to address th[at] defense." *Id.* at 152 n.4.

While the SSA in *Binder II* sought to recoup the attorneys' fees it had paid to the plaintiff law firm despite the claimant's debt being previously discharged in bankruptcy, the SSA in *Binder & Binder, P.C. v. Astrue*, in contrast, had not paid all of the attorneys' fees to the plaintiff law firm, but had mistakenly paid a portion of the legal fees to the claimant with the past-due benefits and then refused to pay the remainder of the certified legal fees to the plaintiff because the claimant had filed a bankruptcy petition. *See Binder II*, 481 F.3d at 144; *Binder & Binder, P.C. v. Astrue*, 848 F. Supp. 2d at 233-35, 240. In discussing the Second Circuit's decision in *Binder II*, the

8

district court in *Binder & Binder, P.C. v. Astrue* stated that,

> [a]lthough the Second Circuit has not expressly addressed the issue, it appears from its holding in [*Binder II*] . . . that a representative seeking fees under 42 U.S.C. § 406(a) may seek judicial review under 28 U.S.C. § 1331, other than review of the amount of fees determined to be reasonable, and that the SSA has an "unambiguous and limited duty" under 42 U.S.C. § 406(a)(4) to certify a reasonable fee for payment, to withhold that amount from any past-due benefits award and to then pay that amount directly to the representative, and has further indicated that the SSA "lacks authority to deviate from the procedure outlined in § 406(a)(4) of the Social Security Act."

848 F. Supp. 2d at 241 (citations omitted). The district court in *Binder & Binder, P.C. v. Astrue* also opined that "the Second Circuit refused to consider, and thereby implicitly rejected, the SSA's sovereign immunity defense on the basis that its 'conclusion that the SSA had a duty to pay the plaintiff the certified fee dispelled the need for it to address that defense.' " *Id.* at 241-42 (quoting *Binder II*, 481 F.3d at 152 n.4). Thus, the district court concluded that "sovereign immunity does not shield the SSA from fulfilling its statutory obligation to a representative for a social security claimant . . . to certify a reasonable fee pursuant to 42 U.S.C. § 406(a), to withhold that amount from any past-due benefits award and then to pay that amount directly to the representative." *Id.* at 242.

Very recently, however, another district court, in *Binder & Binder, P.C. v. Colvin*, 2014 WL 5442958 (E.D.N.Y. Oct. 28, 2014), addressed these same legal issues, but reached the opposite result from the decision reached in *Binder & Binder, P.C. v. Astrue*. Namely, the court found that the plaintiff's claims against the SSA for its legal fees were barred on the basis of sovereign immunity. *Binder & Binder, P.C. v. Colvin*, 2014 WL 5442958, at *1. Analogous to the facts in *Binder & Binder, P.C. v. Astrue*, in *Binder & Binder, P.C. v. Colvin*, "the SSA should have withheld $6,000.00 from [the claimant's] past-due benefits in order to pay [the plaintiff law firm's] attorney's fee, [but] failed to do so." *Binder & Binder, P.C. v. Colvin*, 2014 WL

5442958, at *1. Moreover, the claimant in *Binder & Binder, P.C. v. Colvin* filed for bankruptcy, and the bankruptcy court ordered a discharge of all of the claimant's debts, including the claimant's debt to the plaintiff, thereby preventing the plaintiff from collecting its legal fees directly from the claimant. *Id.*, at *1-2. Thus, the court had to determine whether the SSA's "statutory duty [to certify and pay legal fees] constitute[s] a waiver of the SSA's sovereign immunity, such that an attorney may sue the SSA to recover the amount of a certified fee from the SSA." *Id.*, at *4. The court "conclude[d] that the Social Security Act's fee statute, 42 U.S.C. § 406, does not waive the sovereign immunity of the United States with respect to monetary claims by attorneys to recover attorneys' fees." *Id.* It reasoned that "[n]othing in [§ 406] unambiguously states that the SSA is directly obligated to pay attorneys' fees, or that the failure to withhold attorneys' fees from the claimant opens the SSA to a claim for money damages," but, "[i]nstead, as the Second Circuit has noted, 'the SSA fee provision is simply a statutory interference with the attorney client contractual relationship, which would otherwise be determined by the marketplace for legal services.' " *Id.* (quoting *Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir. 1988)). The court noted that its holding was in accord with the holdings of two other Courts of Appeals that have addressed the issue. *Id.*, at *5; *see Binder & Binder, P.C. v. Handel (In re Handel)*, 570 F.3d 140, 144 (3d Cir. 2009) (holding that 42 U.S.C. § 406 does not waive sovereign immunity because it constitutes merely "a statutory interference with the attorney client contractual relationship which would otherwise be determined by the marketplace for legal services" (citation and internal quotation marks omitted)); *Pittman v. Sullivan*, 911 F.2d 42, 46 (8th Cir. 1990) (holding that 42 U.S.C. § 406 does not waive sovereign immunity "because it contemplates payment of the fee award by the *claimant*, out of past-due benefits, rather than by the government, out of general funds" (emphasis in original) (citation and internal quotation

marks omitted)).  In addition, the court disagreed with the court's decision in *Binder & Binder, P.C. v. Astrue*, that "the SSA may be liable to pay an attorney's fee, . . . because the SSA has a statutory duty to withhold the fee from the claimant and then to pay it to the attorney," reasoning that, "even if money damages are an appropriate remedy for the government's breach of a statutory duty, sovereign immunity may bar that remedy."  *Id.*, at *6 (citing *Binder & Binder, P.C. v. Astrue*, 848 F. Supp. 2d at 241-44).

In addressing the impact of the Second Circuit's holding in *Binder II* on its decision, the court in *Binder & Binder, P.C. v. Colvin* stated that "*Binder II* did not involve the doctrine of sovereign immunity because, in that case, the SSA sought to recoup an attorney's fee already paid to the plaintiff . . . , and [the plaintiff] brought a declaratory judgment [action] seeking a declaration that it did not have to return the money."  *Binder & Binder, P.C. v. Colvin*, 2014 WL 5442958, at *5 (citing *Binder II*, 481 F.3d at 142).  As to this point, this Court notes that the Second Circuit, by entertaining the law firm's application for a declaratory judgment in *Binder II*, while at the same time noting—albeit briefly and without explanation—the SSA's sovereign immunity defense, implicitly found the defense to be inapplicable, i.e., not a bar to addressing the suit on the merits.  Perhaps the underlying rationale was that, given the declaratory nature of the relief sought, the suit was not an action against the United States for sovereign immunity purposes, notwithstanding the identity of the defendant.  *See generally Civil Actions Against the United States, Its Agencies, Officers and Employees* § 1:2 (2014) ("[S]overeign immunity usually will not apply when an action seeks primarily declaratory relief because ordinarily there will be[] no interference with public administration and the government will not be compelled to act or refrain from acting." (footnote omitted)).

While the underlying rationale in *Binder II* concerning sovereign immunity is not detailed and may be debatable, a juxtapositioning of the facts in the present case with the subject rule gives rise to a pivotal distinction between the two cases. Here, unlike in *Binder II*, the relief sought—viz., a money judgment against the United States to be paid from the federal fisc— necessarily implicates the sovereign immunity doctrine. *See Deutsch v. Fed. Bureau of Prisons*, 737 F. Supp. 261, 265 (S.D.N.Y. 1990), *aff'd*, 990 F.2d 909 (2d Cir. 1991). Absent the existence of an unequivocal express waiver of the protection the rule affords the government (*see, e.g.*, section 702 of the Administrative Procedure Act, 5 U.S.C. § 702), the Court lacks subject matter jurisdiction as explained previously in this decision. Accordingly, the Court agrees with the decision reached in *Binder & Binder, P.C. v. Colvin*, that 42 U.S.C. § 406 lacks an unequivocally expressed waiver of sovereign immunity, and, consequently, concludes that Plaintiff's action for money damages against the SSA is barred.

## *CONCLUSION*

For the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
November 21, 2014                           /s/
                                            Denis R. Hurley
                                            Unites States Senior District Judge